T.C. Memo. 2004-56

UNITED STATES TAX COURT

GERALD E. JOHNSON AND DOROTHY JOHNSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7536-98.              Filed March 9, 2004.

<u>Garry A. Pearson</u>, <u>Jon J. Jensen</u>, and <u>Alexander F. Reichert</u>,
for petitioners.

<u>Blaine C. Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined deficiencies of
$3,764, $3,755, and $8,068 in petitioners' Federal income tax
(tax) for 1993, 1994, and 1995, respectively.

We must decide[1] whether certain amounts (reduced by the deductions attributable to such amounts) that petitioners received during the years at issue and that they characterized as rent are subject to self-employment tax under section 1402(a)(1).[2]  We hold that they are not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioners filed the petition in this case, they resided in Hector, Minnesota.

In 1962, Gerald E. Johnson (Mr. Johnson) began farming.  In 1963, Dorothy Johnson (Ms. Johnson) began farming with Mr. Johnson.  Prior to 1989, petitioners farmed 1,030 acres of land, 537 acres of which they owned.  Third parties owned the remaining 493 acres.

From the time Mr. Johnson began farming in 1962, he undertook everything pertaining to running a crop farm by performing the following farm-related activities in the production of agricultural commodities:  Purchasing crop inputs; selling, planting, and harvesting crops; hiring, managing, and firing

---

[1]In addition to the issue that we address herein, there are other determinations in the notice of deficiency (notice) that are computational in that their resolution flows automatically from our resolution of that issue.

[2]All section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

employees; assisting with computer bookkeeping; driving trucks; securing the farmland; and making the business profitable. From the time Ms. Johnson began farming in 1963, she performed the following farm-related activities in the production of agricultural commodities: Maintaining the books and preparing monthly reports for the accountant; preparing payroll; paying employees; depositing employment taxes; banking; preparing food for employees; picking up supplies; driving trucks and tractors; hauling employees from field to field; monitoring the radio and responding to communications; maintaining the farmyard by mowing lawns; and other farm help as needed.

In October 1989, petitioners formed G.E. Johnson, Inc., and each of them owned 50 percent of the stock of that corporation. At all relevant times, G.E. Johnson, Inc., engaged in the farming business, specifically the production of cash crops. During each of the years at issue, G.E. Johnson, Inc., farmed 1,813 acres of land, 617 acres of which petitioners owned. Third parties owned the remaining 1,196 acres.

After the formation of G.E. Johnson, Inc., that company hired Mr. Johnson and Ms. Johnson pursuant to an oral arrangement (oral employment arrangement)[3] under which they were to serve as its chief executive officer (CEO) and chief financial officer

---

[3]During the years at issue, petitioners had no written employment agreement with G.E. Johnson, Inc.

(CFO), respectively, and were to perform in such respective capacities the same farm-related activities in the production of agricultural commodities that they had been performing since they began farming in the early 1960's (petitioners' farm-related activities).[4]  Pursuant to that arrangement, at all relevant times, including during the years at issue, Mr. Johnson,[5] as CEO, and Ms. Johnson,[6] as CFO, performed those activities.

At all relevant times before and after petitioners incorporated their farming operations, the success of those operations depended upon petitioners' farm-related activities.

During the years at issue, G.E. Johnson, Inc., did not pay any wages or other compensation to petitioners in exchange for petitioners' farm-related activities in the production of agricultural commodities, except for $1,000 of wages paid to Mr. Johnson and $44,878 of compensation paid to Mr. Johnson and/or Ms. Johnson during 1994 and 1995, respectively.

During each of the years at issue, petitioners leased to G.E. Johnson, Inc., pursuant to an oral arrangement (oral rental

---

[4]G.E. Johnson, Inc., did not interview any other individuals to perform the farm-related activities that it hired petitioners to perform.

[5]At all relevant times, Mr. Johnson spent virtually 100 percent of his time working for G.E. Johnson, Inc.

[6]At all relevant times, Ms. Johnson spent 100 percent of her time working for G.E. Johnson, Inc.

arrangement) farmland[7] and certain personal property that they owned (petitioners' farmland and personal property) located in Renville, Minnesota.[8] Pursuant to that arrangement, at all relevant times, including during the years at issue, that company paid rent to petitioners for the lease of petitioners' farmland and personal property, irrespective of whether or not that company had a good farming year or had income. During the years at issue, petitioners did not believe that they were, and they were not, obligated or compelled to perform petitioners' farm-related activities in the production by G.E. Johnson, Inc., of agricultural commodities as a condition to that company's being obligated pursuant to the oral rental arrangement to pay rent to petitioners.[9]

Petitioners jointly filed Form 1040, U.S. Individual Income Tax Return, for each of their taxable years 1993 (petitioners' 1993 return), 1994 (petitioners' 1994 return), and 1995 (petitioners' 1995 return). In petitioners' 1993 return, petitioners

---

[7]G.E. Johnson, Inc., also leased certain other farmland from third-party landlords pursuant to oral rental arrangements with those third-party landlords.

[8]During the years at issue, petitioners had no written rental agreement with G.E. Johnson, Inc.

[9]Even if during the years at issue petitioners became sick or incapacitated or otherwise were unable to perform for G.E. Johnson, Inc., petitioners' farm-related activities in the production of agricultural commodities, that company was nonetheless obligated pursuant to the oral rental arrangement to pay rent to them.

reported that Mr. Johnson received $635 of "Wages, salaries, tips, etc." from "HECTOR PUBLIC SCHOOLS" and $330 of "Wages, salaries, tips, etc." from "BUFFALO LAKE-HECTOR SCHOOLS". In that return, petitioners did not report any wages or other compensation for services from G.E. Johnson, Inc. In Schedule E, Supplemental Income and Loss (Schedule E), included as part of petitioners' 1993 return, petitioners reported $66,715 in rent received from the rental of petitioners' farmland and personal property (1993 claimed rent), $34,265 in expenses, and $32,450 in total rental real estate income.

In petitioners' 1994 return, petitioners reported that Mr. Johnson received $420 of "Wages, salaries, tips, etc." from "IND. SCHOOL DISTRICT #2159". In that return, petitioners reported that Ms. Johnson did not receive any wages or other compensation for services from G.E. Johnson, Inc., and that Mr. Johnson received $1,000 of wages from G.E. Johnson, Inc. In Schedule E included as part of petitioners' 1994 return, petitioners reported $60,000 in rent received from the rental of petitioners' farmland and personal property (1994 claimed rent), $31,240 in expenses, and $28,760 in total rental real estate income.

In petitioners' 1995 return, petitioners reported that they received no wages or compensation from any source. In Schedule E included as part of petitioners' 1995 return, petitioners reported $104,878 in rent received from the rental of petitioners'

farmland and personal property (1995 claimed rent), $32,018 in expenses, and $72,860 in total rental real estate income. Immediately prior to the trial in this case, petitioners conceded that $44,878 of the $104,878 of the 1995 claimed rent was not received for the lease of petitioners' farmland and personal property pursuant to the oral rental arrangement and is subject to self-employment tax. (For convenience, we shall refer to the $60,000 balance ($104,878 minus $44,878) of such claimed rent as the modified 1995 claimed rent.)

The 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent that petitioners received during the respective years at issue from G.E. Johnson, Inc., pursuant to the oral rental arrangement represented fair market rents and are consistent with the rents paid during those years by G.E. Johnson, Inc., to other third-party landlords.

G.E. Johnson, Inc., filed Form 1120, U.S. Corporation Income Tax Return, for each of its taxable years ended October 31, 1993 (G.E. Johnson, Inc.'s 1993 return), October 31, 1994 (G.E. Johnson, Inc.'s 1994 return), October 31, 1995 (G.E. Johnson, Inc.'s 1995 return), and October 31, 1996 (G.E. Johnson, Inc.'s 1996 return). In G.E. Johnson, Inc.'s 1993 return, G.E. Johnson, Inc., reported that it paid $20,000 of compensation to Mr.

Johnson as an officer of that company[10] and that it did not pay any compensation to Ms. Johnson as an officer. In that return, G.E. Johnson, Inc., reported that it paid $38,082 of salaries and wages, although it did not identify in that return the person or persons to whom it paid those wages. In G.E. Johnson, Inc.'s 1993 return, G.E. Johnson, Inc., reported that it paid $145,628 in rent, although it did not specify in that return the amount of such rent that it paid to petitioners during its taxable year ended October 31, 1993.

In G.E. Johnson, Inc.'s 1994 return, G.E. Johnson, Inc., reported that it paid $1,000 of compensation to Mr. Johnson as an officer of that company and that it did not pay any compensation to Ms. Johnson as an officer. In that return, G.E. Johnson, Inc., reported that it paid $43,544 of salaries and wages, although it did not identify in that return the person or persons to whom it paid those wages. In G.E. Johnson, Inc.'s 1994 return, G.E. Johnson, Inc., reported that it paid $122,014 in rent, although it did not specify in that return the amount of such rent that it paid to petitioners during its taxable year ended October 31, 1994.

---

[10]As discussed above, petitioners' 1993 return did not report any wages or other compensation received from G.E. Johnson, Inc. Although not clear from the record, we presume that G.E. Johnson, Inc., paid to Mr. Johnson sometime during the last two months of 1992 the $20,000 of compensation that it reported it paid to him as an officer during its taxable year ended Oct. 31, 1993.

In G.E. Johnson, Inc.'s 1995 return, G.E. Johnson, Inc., reported that it did not pay any compensation to Mr. Johnson or Ms. Johnson as officers of that company. In that return, G.E. Johnson, Inc., reported that it paid $47,040 of salaries and wages, although it did not identify in that return the person or persons to whom it paid those wages. In G.E. Johnson, Inc.'s 1995 return, G.E. Johnson, Inc., reported that it paid $175,497 in rent, although it did not specify in that return the amount of such rent that it paid to petitioners during its taxable year ended October 31, 1995.

In G.E. Johnson, Inc.'s 1996 return, G.E. Johnson, Inc., reported that it did not pay any compensation to Mr. Johnson or Ms. Johnson as officers of that company. In that return, G.E. Johnson, Inc., reported that it paid $49,816 of salaries and wages, although it did not identify in that return the person or persons to whom it paid those wages. In G.E. Johnson, Inc.'s 1996 return, G.E. Johnson, Inc., reported that it paid $181,763 in rent, although it did not specify in that return the amount of such rent that it paid to petitioners during its taxable year ended October 31, 1996.

On January 22, 1998, respondent issued a notice to petitioners with respect to their taxable years 1993, 1994, and 1995. In that notice, respondent determined that the 1993 claimed rent, the 1994 claimed rent, and the 1995 claimed rent, reduced by the

deductions attributable to such respective rents, are subject to self-employment tax for the respective years at issue because they constitute net earnings from self-employment under section 1402(a)(1).

OPINION

Petitioners bear the burden of proving that the determinations in the notice that remain at issue are erroneous.[11]  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

The ultimate dispute between the parties that we must resolve is whether the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent, reduced by the deductions attributable to such respective rents, are subject to self-employment tax because they constitute net earnings from self-employment under section 1402(a)(1).

As applicable here, section 1402(a)(l) defines the term "net earnings from self-employment" to mean

> the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business * * * except that in computing such gross income and deductions * * *--
>
> (1) there shall be excluded rentals from real

---

[11]Sec. 7491(a) is not applicable in the instant case.  That is because respondent issued the notice to petitioners on Jan. 22, 1998, and a fortiori the examination of the years at issue would have commenced before July 23, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

estate and from personal property leased with the real estate * * * together with the deductions attributable thereto * * * except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities * * * on such land, and that there shall be material participation by the owner or tenant * * * in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such agricultural * * * commodity;

(The regulations under section 1402(a)(1), and we, refer to the farm rental income that is included under that section in the definition of net earnings from self-employment as includible farm rental income.)

The regulations under section 1402(a)(1) elaborate on the meaning of includible farm rental income, as follows:

(b) Special rule for "includible farm rental income"--(1) In general. * * * there shall be included in determining net earnings from self-employment for taxable years ending after 1955 any income derived by an owner or tenant of land, if the following requirements are met with respect to such income:

(i) The income is derived under an arrangement between the owner or tenant of land and another person which provides that such other person shall produce agricultural * * * commodities on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural * * * commodities; and

(ii) There is material participation by the owner or tenant with respect to any such agricultural * * * commodity.

Income so derived shall be referred to in this section as "includible farm rental income".

(2) <u>Requirement that income be derived under an arrangement</u>. In order for rental income received by an owner or tenant of land to be treated as includible farm rental income, such income must be derived pursuant to a sharefarming or other rental arrangement which contemplates material participation by the owner or tenant in the production or management of production of agricultural * * * commodities.

(3) <u>Nature of arrangement</u>. (i) The arrangement between the owner or tenant and the person referred to in subparagraph (1) of this paragraph may be either oral or written. The arrangement must impose upon such other person the obligation to produce one or more agricultural * * * commodities * * * on the land of the owner or tenant. In addition, it must be within the contemplation of the parties that the owner or tenant will participate in the production or the management of the production of the agricultural * * * commodities required to be produced by the other person under such arrangement to an extent which is material with respect either to the production or to the management of production of such commodities or is material with respect to the production and management of production when the total required participation in connection with both is considered.

*      *      *      *      *      *      *

(4) <u>Actual participation</u>. In order for the rental income received by the owner or tenant of land to be treated as includible farm rental income, not only must it be derived pursuant to the arrangement described in subparagraph (1) of this paragraph, but also the owner or tenant must actually participate to a material degree in the production or in the management of the production of any of the commodities required to be produced under the arrangement, or he must actually participate in both the production and the management of the production to an extent that his participation in the one when combined with his participation in the other will be considered participation to a material degree. * * *

Sec. 1.1402(a)-4(b), Income Tax Regs.

The parties agree that during the years at issue petitioners were to, and did, participate materially within the meaning of section 1402(a)(1) in the production by G.E. Johnson, Inc., of agricultural commodities by performing petitioners' farm-related activities. They disagree over whether the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent were derived under an arrangement within the meaning of section 1402(a)(1)(A) and section 1.1402(a)-4(b)(2), Income Tax Regs., between petitioners and G.E. Johnson, Inc., which provided or contemplated that G.E. Johnson, Inc., was to produce agricultural commodities on petitioners' land and that petitioners were to participate materially in the production of such commodities.

It is petitioners' position that the claimed rents at issue were not derived under such an arrangement and that consequently such claimed rents, reduced by the deductions attributable to such respective rents, are not subject to self-employment tax because they do not constitute includible farm rental income under section 1402(a)(1) and the regulations thereunder. In support of their position, petitioners rely on the opinion of the Court of Appeals for the Eighth Circuit in McNamara v. Commissioner, 236 F.3d 410 (8th Cir. 2000), revg. and remanding Bot v. Commissioner, T.C. Memo. 1999-256, Hennen v. Commissioner, T.C. Memo. 1999-306, and McNamara v. Commissioner, T.C. Memo. 1999-

333.[12]  In reliance on McNamara II, petitioners contend that

>the Johnsons are receiving fair market value rental payments.  Although this may result in little or no other compensation being paid to the taxpayers for the services they provide to the corporation, this does not establish the required nexus between the rental payments and the material participation required to trigger the inclusion of the payments within the definition of self-employment income.  To the contrary, adoption of the Commissioner's position would compel the conclusion that the taxpayers, as landlords, are required to rent property to the corporation at below fair market value and below the rates paid to third parties.  The "missing link" in the Commissioner's argument is the same as in the McNamara case:  the corporation's obligation to make the rental payments is separate and distinct from the taxpayers' participation in the farming operation.

Respondent counters that McNamara II does not require the result advocated by petitioners in the instant case.  Respondent argues that

>The Eighth Circuit in McNamara * * * created a judicial exception for fair rental value when the landlord has two independent arrangements with the lessee for rent and wages and there is no nexus between the two arrangements.

>Petitioners fail to meet the Eighth Circuit's standard because they failed to enter into a separate employment agreement with their corporation, and to the extent they did, it was so inextricably interrelated with the oral lease that the nexus is obvious and cannot be overlooked.  Petitioners' classification of all funds from the corporation as rent and none as wages demonstrates that there were not independent arrangements with respect to real estate rentals and compensation for services.  Moreover, the transaction

---

[12]We shall refer to our respective opinions that the Court of Appeals for the Eighth Circuit reversed and remanded as Bot I, Hennen I, and McNamara I and to the opinion of that Court as McNamara II.

does not pass muster given the strict scrutiny applied to such related-party transactions, and given that exceptions from self-employment tax under section 1402(a)(1) are narrowly construed.

Bot I, Hennen I, and McNamara I involved taxpayers who, pursuant to certain agreements or arrangements, were to, and did, participate materially in the production of agricultural commodities involved in those respective cases. In Bot I and Hennen I, the taxpayer-owners of the farmland in question entered into (1) employment agreements or arrangements with their respective taxpayer-spouses and (2) rental agreements or arrangements with those spouses. In McNamara I, the taxpayer-owners of the farmland in question entered into (1) an employment agreement or arrangement with their wholly owned corporation and (2) a rental agreement or arrangement with that corporation.

In Bot I and Hennen I, the taxpayer-owners of the farmland in question contended that the respective rental agreements or arrangements involved in those cases did not require their material participation in the production of the agricultural commodities in question. We found that the respective taxpayer-owners in Bot I and Hennen I played a material role in the production of such commodities under an agreement or arrangement with their taxpayer-spouses. We further found in Bot I and Hennen I that the income received from the rental of the respective taxpayer-owners' farmland in question was derived under an arrangement between the taxpayer-owners of the farmland and their

taxpayer-spouses, which provided that those spouses were to produce agricultural commodities on that land and that the taxpayer-owners were to participate materially in the production of such commodities.  We held in Bot I and Hennen I that the rents at issue in those cases, reduced by the deductions attributable to such respective rents, were subject to self-employment tax because they constituted includible farm rental income under section 1402(a)(1).

In McNamara I, the taxpayer-owners of the farmland in question contended that the rental agreement or arrangement involved in that case did not require their material participation in the production of the agricultural commodities in question.  We found that the taxpayer-owners played a material role in the production of such commodities under an agreement or arrangement with their wholly owned corporation.  We further found in McNamara I that the income received from the rental of the taxpayers' farmland in question was derived under an arrangement between the taxpayer-owners and their wholly owned corporation, which provided that that corporation was to produce agricultural commodities on that land and that the taxpayer-owners were to participate materially in the production of such commodities.  We held in McNamara I that the rent at issue in that case, reduced by the deductions attributable to such rents, was subject to self-employment tax because it constituted includible farm

rental income under section 1402(a)(1).

The taxpayers in Bot I, Hennen I, and McNamara I appealed our respective decisions in those cases to the Court of Appeals for the Eighth Circuit. That Court decided those appeals in one opinion in McNamara II. In McNamara II, the Court of Appeals for the Eighth Circuit concluded:

> we cannot say the Tax Court clearly erred in conclud-
> ing, as a factual matter, that Mrs. McNamara, Mrs. Bot,
> and Mrs. Hennen were required--by their respective
> employment agreements or by more informal "arrange-
> ments"--to materially participate in agricultural
> production and management, and that all three did in
> fact materially participate in those activities. See
> Treas. Reg. § 1.1402(a)-4(b) (as amended in 1980).
>
> More promising, however, is taxpayers' argument
> that the lessor-lessee relationships should stand on
> their own apart from the employer-employee relation-
> ships. To this end, taxpayers insist that the rents in
> question were consistent with market rates for agricul-
> tural land. In fact, the transcripts of each trial
> contain uncontradicted testimony that the rents were at
> or slightly below fair market value. * * * The Tax
> Court's decision, however, contains no factual finding
> in this regard. Moreover, the Commissioner apparently
> did not pursue the issue at trial because, as it con-
> tended at oral argument, the amount of the rent is
> irrelevant. We disagree.
>
> What is missing from both the Commissioner's and
> the Tax Court's analyses is any mention of a nexus
> between the rents received by Taxpayers and the "ar-
> rangement" that requires the landlords' material par-
> ticipation. We believe this omission overlooks §
> 1402(a)(1)'s requirement that rents be "derived under"
> such an arrangement. That is to say, the mere exis-
> tence of an arrangement requiring and resulting in
> material participation in agricultural production does
> not automatically transform rents received by the
> landowner into self-employment income. It is only
> where the payment of those rents comprise part of such
> an arrangement that such rents can be said to derive

from the arrangement.

Rents that are consistent with market rates very strongly suggest that the rental arrangement stands on its own as an independent transaction and cannot be said to be part of an "arrangement" for participation in agricultural production. Although the Commissioner is correct that, unlike other provisions in the Code, § 1402(a)(1) contains no explicit safe-harbor provision for fair market value transactions, we conclude that this is the practical effect of the "derived under" language.

McNamara v. Commissioner, 236 F.3d at 412-413.

The Court of Appeals for the Eighth Circuit remanded Bot I, Hennen I, and McNamara I in order to provide the Commissioner of Internal Revenue the opportunity to show that a connection existed between the respective rents and the respective employment agreements or arrangements involved in those cases. Id. On remand, the respective parties in Bot I, Hennen I, and McNamara I declined our invitation to conduct additional trials. As a result, we found that the rent at issue in each of those cases was at or below market rates and decided that no deficiency in self-employment tax existed in any of those cases.

In Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we concluded that we would follow a Court of Appeals opinion which is squarely in point where appeal from our decision would lie to that Court of Appeals and to that court alone. In the instant case, during the years at issue petitioners had two arrangements with G.E. Johnson, Inc.: (1) An oral employment arrangement under which petitioners were

to, and did, participate materially in the production by G.E. Johnson, Inc., of agricultural commodities by performing petitioners' farm-related activities; and (2) an oral rental arrangement under which petitioners leased to G.E. Johnson, Inc., petitioners' farmland and personal property.  There were two identical types of arrangements involved in McNamara II.  The issue presented here is whether the claimed rents at issue, reduced by the deductions attributable to such respective rents, are subject to self-employment tax because they constitute includible farm rental income under section 1402(a)(1).  That was the identical issue presented in McNamara II.  We conclude that McNamara II is squarely in point.  Moreover, the court to which an appeal in this case would normally lie is the Court of Appeals for the Eighth Circuit.  We shall follow McNamara II.  Golsen v. Commissioner, supra.

As required by McNamara II, we must determine whether there was a nexus between (1) the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent that petitioners received pursuant to the oral rental arrangement and (2) the oral employment arrangement under which petitioners were to, and did, participate materially in the production by G.E. Johnson, Inc., of agricultural commodities.[13]  In making that determination, we

---

[13]We note that in McNamara I there is no indication that the parties advanced, and the Court did not address, any argument

(continued...)

bear in mind the conclusions of the Court of Appeals for the

Eighth Circuit in McNamara II that

> Rents that are consistent with market rates very
> strongly suggest that the rental arrangement stands on
> its own as an independent transaction and cannot be
> said to be part of an "arrangement" for participation
> in agricultural production. Although the Commissioner
> is correct that, unlike other provisions in the Code,
> § 1402(a)(1) contains no explicit safe-harbor provision
> for fair market value transactions, we conclude that
> this is the practical effect of the "derived under"
> language.

-------------------

[13](...continued)
that, because the taxpayer-owners of the farmland in that case
materially participated within the meaning of sec. 1402(a)(1) in
the production of agricultural commodities as employees of their
wholly owned corporation and not in their individual capacities,
the analysis under sec. 1402(a)(1) should be different from the
analysis in Bot I and Hennen I, where the taxpayer-owners of the
farmland involved in those two cases materially participated
within the meaning of sec. 1402(a)(1) in the production of
agricultural commodities in their individual capacities. In
McNamara II, there is no indication that the taxpayers appealing
McNamara I advanced, and the Court of Appeals for the Eighth
Circuit did not address, any argument that the analysis under
sec. 1402(a)(1) with respect to such taxpayers should be any
different from the analysis with respect to the taxpayers appeal-
ing Bot I and Hennen I.

In the instant case, neither petitioners nor respondent
advances any argument that the analysis under sec. 1402(a)(1)
should be different from the analysis in McNamara II because
petitioners materially participated within the meaning of sec.
1402(a)(1) in the production by G.E. Johnson, Inc., of agricul-
tural commodities as employees of G.E. Johnson, Inc., and not in
their individual capacities. Indeed, petitioners rely solely on
the analysis in McNamara II to support their position in the
instant case. Consequently, we shall not address whether our
analysis would be different in the instant case because petition-
ers materially participated within the meaning of sec. 1402(a)(1)
in the production of agricultural commodities by G.E. Johnson,
Inc., as employees of G.E. Johnson, Inc., and not in their
individual capacities.

McNamara v. Commissioner, 236 F.3d at 413.

We have found based on the stipulation of the parties that the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent represented fair market rents and are consistent with the rents paid during those years by G.E. Johnson, Inc., to other third-party landlords. On the record before us, we further find that petitioners have established that during each of the years at issue there was no nexus between (1) the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent that petitioners received pursuant to the oral rental arrangement and (2) the oral employment arrangement under which petitioners were to, and did, participate materially in the production by G.E. Johnson, Inc., of agricultural commodities. Pursuant to the oral rental arrangement, during the years at issue G.E. Johnson, Inc., paid rent to petitioners for the lease of petitioners' farmland and personal property, irrespective of whether or not that company had a good farming year or had income. Moreover, during those years, petitioners did not believe that they were, and they were not, obligated or compelled to perform petitioners' farm-related activities in the production by G.E. Johnson, Inc., of agricultural commodities as a condition to that company's being obligated to pay rent to petitioners pursuant to the oral rental arrangement.

Based upon our examination of the entire record in this

case, we find that petitioners have shown that the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent were not derived under an arrangement within the meaning of section 1402(a)(1)(A) and section 1.1402(a)-4(b)(2), Income Tax Regs., between petitioners and G.E. Johnson, Inc., which provided or contemplated that G.E. Johnson, Inc., was to produce agricultural commodities on petitioners' land and that petitioners were to participate materially in the production of such commodities. On that record, we hold that the 1993 claimed rent, the 1994 claimed rent, and the modified 1995 claimed rent, reduced by the deductions attributable to such respective rents, are not subject to self-employment tax because they do not constitute includible farm rental income and therefore are not net earnings from self-employment under section 1402(a)(1).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concession of petitioners,

Decision will be entered

under Rule 155.